[Cite as *State v. Milhoan*, 2014-Ohio-310.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellant, | : | No. 13AP-74 |
| | | (C.P.C. No. 11CR-01-20) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Ryan L. Milhoan, | : | |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on January 30, 2014

*Ron O'Brien*, Prosecuting Attorney, and *Steven L. Taylor*, for appellant.

*Dennis C. Belli*, for appellee.

APPEAL from the Franklin County Court of Common Pleas.

GREY, J.

{¶ 1} Plaintiff-appellant, the State of Ohio, appeals from a judgment of the Franklin County Court of Common Pleas sentencing defendant-appellee, Ryan L. Milhoan, to a term of 48 months of community control in lieu of prison time.

{¶ 2} This case is before the court for the second time after a prior remand. *State v. Milhoan*, 10th Dist. No. 12AP-61, 2012-Ohio-4507 ("*Milhoan I*"). By way of background, we quote directly from our prior decision:

> On January 3, 2011, the Franklin County Grand Jury indicted Milhoan on 12 counts of pandering sexually oriented material involving a minor, felonies of the second degree, and 12 counts of pandering sexually oriented material involving a minor, felonies of the fourth degree. The charges arose following an investigation with the Internet Crimes Against

> Children Task Force. Milhoan's IP address was associated with numerous files containing child pornography. Following a complete forensics exam conducted on three different computers seized from Milhoan, 960 images and 75 videos of child pornography were found.
>
> Milhoan pled guilty to pandering sexually oriented material involving a minor, Counts 1, 2, 3, and 4 of the indictment, felonies of the second degree, and to Counts 21, 22, 23, and 24 of the indictment, felonies of the fourth degree. As part of the plea agreement, the State agreed not to prosecute Milhoan on Counts 5 through 20 of the indictment. Also, as part of the plea agreement, the State agreed that they would not present the matter to the United States Attorney for potential federal prosecution. The trial court ordered a pre-sentence investigation and continued the case for sentencing. Ultimately, the trial court placed Milhoan on community control for a period of four years, and ordered that he be placed on intensive sex offender supervision, as well as ordering him to maintain employment, submit to urine screens, pay costs, and to have no use of the internet. Milhoan was classified as a Tier II sex offender.

*Id.* at ¶ 2-3.

{¶ 3}  In the case's first iteration before this court, we held that the trial court had failed to make the findings required by R.C. 2929.13(D)(2) to overcome the statutory presumption that a prison term is an appropriate sentence for a first or second-degree felony.  We vacated the sentence on this basis and remanded the matter to the trial court for re-sentencing in compliance with R.C. 2929.13(D).  *Id.* at ¶ 7.

{¶ 4}  The trial court has now re-sentenced appellee to a sentence that again does not include a prison term and the state has again appealed, bringing the following two assignments of error:

> [I.] THE TRIAL COURT ERRED IN IMPOSING COMMUNITY CONTROL WHEN IT FAILED TO MAKE THE FULL REQUIRED FINDINGS FOR OVERCOMING THE PRESUMPTION OF PRISON AND WHEN IT RELIED ON AN ERRONEOUS CLAIM THAT DEFENDANT COULD ONLY RECEIVE TREATMENT IF HE WAS PLACED ON COMMUNITY CONTROL.

**[II.]   THE TRIAL COURT'S IMPOSITION OF COMMUNITY CONTROL IS CONTRARY TO LAW, AS DEFENDANT CANNOT OVERCOME THE PRESUMPTION IN FAVOR OF A PRISON TERM.**

{¶ 5}   Appellee was convicted of four second-degree felonies and four fourth-degree felonies.  Pursuant to R.C. 2929.13(D)(1), "for a felony of the first or second degree, * * * it is presumed that a prison term is necessary in order to comply with the purposes and principles of sentencing under section 2929.11 of the Revised Code."  Despite this presumption in favor of prison time, the sentencing court may deviate downward and impose community control instead of a prison term if the court makes both of the following findings set forth in R.C. 2929.13(D)(2)(a) and (b):

> (a) A community control sanction or a combination of community control sanctions would adequately punish the offender and protect the public from future crime, because the applicable factors under section 2929.12 of the Revised Code indicating a lesser likelihood of recidivism outweigh the applicable factors under that section indicating a greater likelihood of recidivism.
>
> (b) A community control sanction or a combination of community control sanctions would not demean the seriousness of the offense, because one or more factors under section 2929.12 of the Revised Code that indicate that the offender's conduct was less serious than conduct normally constituting the offense are applicable, and they outweigh the applicable factors under that section that indicate that the offender's conduct was more serious than conduct normally constituting the offense.

{¶ 6}   The sentencing court must make both the findings specified above before it may deviate from the presumption that a prison term should be imposed.  *Id.* at ¶ 6; *State v. Fisher*, 10th Dist. No. 13AP-236, 2013-Ohio-4063, ¶ 7.  "These findings must be made at the sentencing hearing."  *Id.* at ¶ 7, citing *State v. Martin*, 10th Dist. No. 08AP-1103, 2009-Ohio-3485, ¶ 7; *State v. Wooden*, 10th Dist. No. 05AP-330, 2006-Ohio-212, ¶ 5. The enactment of 2011 Am.Sub.H.B. No. 86, effective September 30, 2011, removed the requirement for the trial court to state its reasons for making findings under R.C. 2929.13(D)(2).  *Fisher* at ¶ 6; c*ompare* former R.C. 2929.19(B)(2)(b) and *State v. Mathis*,

109 Ohio St.3d 54, 2006-Ohio-855, ¶ 23.   While the court is no longer   required to articulate reasons to explain its findings, the record must still reflect that the court clearly did make the findings required by statute.  *Fisher* at ¶ 6.

{¶ 7}  In defining the standard for a downward departure in sentencing, R.C. 2929.13(D)(2) references the sentencing factors of R.C. 2929.12.  With respect to the seriousness of the offense, R.C. 2929.12(B) and (C) set forth the "more serious" and "less serious" factors respectively:

> (B) The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is more serious than conduct normally constituting the offense:
>
> (1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim.
>
> (2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.
>
> (3) The offender held a public office or position of trust in the community, and the offense related to that office or position.
>
> (4) The offender's occupation, elected office, or profession obliged the offender to prevent the offense or bring others committing it to justice.
>
> (5) The offender's professional reputation or occupation, elected office, or profession was used to facilitate the offense or is likely to influence the future conduct of others.
>
> (6) The offender's relationship with the victim facilitated the offense.
>
> (7) The offender committed the offense for hire or as a part of an organized criminal activity.
>
> (8) In committing the offense, the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion.

(9) If the offense is a violation of section 2919.25 or a violation of section 2903.11, 2903.12, or 2903.13 of the Revised Code involving a person who was a family or household member at the time of the violation, the offender committed the offense in the vicinity of one or more children who are not victims of the offense, and the offender or the victim of the offense is a parent, guardian, custodian, or person in loco parentis of one or more of those children.

(C) The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is less serious than conduct normally constituting the offense:

(1) The victim induced or facilitated the offense.

(2) In committing the offense, the offender acted under strong provocation.

(3) In committing the offense, the offender did not cause or expect to cause physical harm to any person or property.

(4) There are substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense.

{¶ 8} With respect to the likelihood of recidivism, R.C. 2929.12(D) and (E) set forth the factors indicating "a greater likelihood of recidivism" and "lesser likelihood of recidivism" respectively.

(D) The sentencing court shall consider all of the following that apply regarding the offender, and any other relevant factors, as factors indicating that the offender is likely to commit future crimes:

(1) At the time of committing the offense, the offender was under release from confinement before trial or sentencing, under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or under post-release control pursuant to section 2967.28 or any other provision of the Revised Code for an earlier offense or had been unfavorably terminated from post-release control for a prior offense pursuant to division (B) of section 2967.16 or section 2929.141 of the Revised Code.

(2) The offender previously was adjudicated a delinquent child pursuant to Chapter 2151. of the Revised Code prior to January 1, 2002, or pursuant to Chapter 2152. of the Revised Code, or the offender has a history of criminal convictions.

(3) The offender has not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child pursuant to Chapter 2151. of the Revised Code prior to January 1, 2002, or pursuant to Chapter 2152. of the Revised Code, or the offender has not responded favorably to sanctions previously imposed for criminal convictions.

(4) The offender has demonstrated a pattern of drug or alcohol abuse that is related to the offense, and the offender refuses to acknowledge that the offender has demonstrated that pattern, or the offender refuses treatment for the drug or alcohol abuse.

(5) The offender shows no genuine remorse for the offense.

(E) The sentencing court shall consider all of the following that apply regarding the offender, and any other relevant factors, as factors indicating that the offender is not likely to commit future crimes:

(1) Prior to committing the offense, the offender had not been adjudicated a delinquent child.

(2) Prior to committing the offense, the offender had not been convicted of or pleaded guilty to a criminal offense.

(3) Prior to committing the offense, the offender had led a law-abiding life for a significant number of years.

(4) The offense was committed under circumstances not likely to recur.

(5) The offender shows genuine remorse for the offense.

{¶ 9} The state's first assignment of error asserts that the trial court once again failed to make the requisite findings to overcome the presumption that a prison term was the appropriate sentence for appellee's convictions. Subsumed in this position is the

argument that, if the court did make the requisite findings, those findings are not supported by the record.

{¶ 10} Our discussion begins with the threshold question of how the recent enactment of H.B. No. 86 has affected the nature and scope of our review of trial court decisions. Specifically, we must decide whether the law requires the trial court to make "findings" with respect to each of the itemized factors set forth in R.C. 2929.12, or whether these factors are more in the nature of "reasons" supporting the court's R.C. 2929.13(D)(2) findings. If the R.C. 2929.12 factors are not required findings unto themselves, the court must still satisfy its statutory obligation to consider and weigh those reasons, but need go no further in its expressed reasoning than to state that it had done so. Neither of our two post-H.B. No. 86 cases addressing amended R.C. 2929.13(D)(2), *Fisher* and *Milhoan I*, expressly addresses these questions because both were decided on bare failure by the trial court to make the two initial findings under R.C. 2929.13(D)(2) proper.

{¶ 11} Cases decided under pre-H.B. No. 86 law, in which the trial court was required to state its reasons for making R.C. 2929.13(D) findings, tended to discuss the R.C. 2929.13(D)(2) determination concurrently with the itemization of underlying considerations set forth in R.C. 2929.12. This sometimes implied that the required express findings by the trial court consist not only of the two-pronged determination required by R.C. 2929.13(D)(2)(a) and (b), but also a detailed examination of each of the factors to be considered under R.C. 2929.12.

{¶ 12} Unlike other aspects of felony sentencing, the statutory language governing the procedure for a downward departure under R.C. 2929.13(D)(2) was unaffected by the Supreme Court of Ohio's decision in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856. Pre- *Foster* cases addressing the consideration of R.C. 2929.12 factors in other felony sentencing situations, such as the imposition of consecutive terms of imprisonment in derogation of the presumption for concurrent terms, are therefore instructive.

{¶ 13} Even pre-*Foster*, the Supreme Court did not require particularized explanations of the R.C. 2929.12 factors: "The Code does not specify that the sentencing judge must use specific language or make specific findings on the record in order to evince the requisite consideration of the applicable seriousness and recidivism factors. R.C.

2929.12. For this reason, the sentencing judge could have satisfied her duty under R.C. 2929.12 with nothing more than a rote recitation that she had considered the applicable age factor of R.C. 2929.12(B)(1)." *State v. Arnett*, 88 Ohio St.3d 208, 215 (2000), citing *State v. Edmonson*, 86 Ohio St.3d 324, 326 (1999). Post-*Foster* cases continued this interpretation: "R.C. 2929.11 and 2929.12 * * * are not fact-finding statutes like R.C. 2929.14. Instead, they serve as an overarching guide for trial judges to consider in fashioning an appropriate sentence." *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, ¶ 17 (footnote Omitted) (plurality opinion) (explaining why R.C. 2929.12 sentencing factors were unaffected by *Foster*). More explicitly put, "the trial court's considerations under R.C. 2929.11 and 2929.12 are not 'findings.' " *Id.* at ¶ 36 (Willamowski, J., sitting by assignment, concurring in judgment). Accordingly, " '[t]he Code does not specify that the sentencing judge must use specific language or make specific findings on the record in order to evince the requisite consideration of the applicable seriousness and recidivism factors.' " *State v. Saur*, 10th Dist. No. 10AP-1195, 2011-Ohio-6662, ¶ 44, quoting *Arnett* at 215. *See also State v. Stevens*, 1st Dist. No. 130278, 2013-Ohio-5218, ¶ 12, citing *State v. Kennedy*, 1st Dist. No. C-120337, 2013-Ohio-4221: "R.C. 2929.11 and 2929.12 are not 'fact finding' statutes, and * * * we may presume a trial court has considered these factors absent an affirmative demonstration by a defendant to the contrary."

{¶ 14} We conclude from this that, while R.C. 2929.13(D)(2) requires express findings that include a general declaration that the court has weighed the R.C. 2929.12 factors as directed by R.C. 2929.13(D)(2)(a) and (b), any further explanation by the trial court is optional because it constitutes the expression of "reasons" that are no longer required by statute.

{¶ 15} This clarification leads us to the standard of review to be applied on appeal. The prosecution brings the present appeal under R.C. 2953.08(B), pursuant to which the state "may appeal as a matter of right a sentence imposed upon a defendant * * * on any of the following grounds: (1) the sentence did not include a prison term despite a presumption favoring a prison term for the offense for which it was imposed." R.C. 2953.08(G)(2) defines our standard of review:

> The court hearing an appeal under division (A), (B), or (C) of
> this section shall review the record, including the findings

underlying the sentence or modification given by the sentencing court.

The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13.

(b) That the sentence is otherwise contrary to law.

{¶ 16} Under this standard of review, we consider whether the sentence imposed is both in accordance with applicable law and supported by the record. The "clear and convincing" standard of R.C. 2929.08(G)(2) is unaffected by the Supreme Court's abrogation of Ohio's felony sentencing scheme in *Foster*, and subsequent clarifications to *Foster* provided by *Kalish*, as well as the legislature's reinstatement of some *Foster*-affected provisions by H.B. No. 86. *State v. Sherman*, 8th Dist. No. 97840, 2012-Ohio-3958. As the case is now postured, this asks us to determine whether the trial court expressly made the required findings and whether we determine by clear and convincing evidence that those findings are not supported by the record.

{¶ 17} The standard of "clear and convincing evidence" is defined as "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. In applying the clear and convincing standard when reviewing a sentence imposed by the trial court, " 'we neither substitute our judgment for that of the trial court nor simply defer to its discretion.' " *State v. Burton*, 10th Dist. No. 06AP-690, 2007-Ohio-1941, ¶ 25, quoting *State v. Vickroy*, 4th Dist. No. 06CA4, 2006-Ohio-5461, ¶ 16 (both cases overruled by *Kalish* as to the standard of review in *upward* departures, *State*

*v. Murphy*, 10th Dist. No. 12AP-952, 2013-Ohio-5599).  Under this standard, we " 'look to the record to determine whether the sentencing court considered and properly applied the non-excised statutory guidelines and whether the sentence is otherwise contrary to law.' " *Id.* at ¶ 12, citing *Vickroy* at ¶ 16 (alterations in *Burton* omitted).

{¶ 18} Having clarified our interpretation of the statutory requirements placed upon the trial court at sentencing, we turn to the merits of the appeal.  Upon remand from this court pursuant to *Milhoan I*, the trial court held a new sentencing hearing beginning on December 4, 2012, and continued to conclusion on December 20, 2012.  At the outset of proceedings, the state argued vigorously for imposition of a prison sentence emphasizing the vast quantity of carefully catalogued and organized child pornography discovered on appellee's computer, and the fact that appellee's training and degree in computer science obviated the possibility of the materials being acquired or retained in error.  The state also stressed appellee's reported lack of cooperation with probation authorities, and appellee's perceived lack of repentance or acknowledgement of the seriousness of his crime.

{¶ 19} Defense counsel responded by pointing to appellee's ongoing psychological treatment for severe psychological and neurological disorders, lack of criminal history, and a strong family support network.  Defense counsel also expressed surprise at the prosecution's assertion that appellee had not cooperated with the probation process; defense counsel claimed that conversations with appellee's probation officer in Jefferson County revealed no such lack of cooperation.

{¶ 20} When the hearing reconvened on December 20, the court had before it the pre-sentence investigation report prepared by the Franklin County Adult Probation Department.  This report concluded with a recommendation of community control: "Based on the information obtained throughout the PSI process, no prior criminal history, and the offender's low risk on the ORAS [Ohio Risk Assessment System] risk assessment tool, the offender is amenable to community control."  (PSI at 10.)  The court also had available several summaries prepared by different mental health caregivers who had counseled or treated appellee. The court heard live comments from counsel, appellee's mother, appellee himself, and Ms. Sean Kelly, an officer of the Franklin County Adult Probation Department.  Because appellee's supervision is in part delegated to a probation

officer in Jefferson County, where appellee resides with his family, and the Jefferson County officer did not appear, the court was again faced with conflicting accounts of appellee's conduct and attitude while under supervision. The assigned Franklin County officer, however, did relate her personal observations as well as those expressed to her by her Jefferson County colleague. Among these was the belief that appellee had access to a computer and the internet while living in his mother's home, in clear violation of his terms of community control. In response, appellee and his mother both stated that this was no longer the case.

{¶ 21} The court then made the following findings, which we reproduce in toto:

> [THE COURT:] But the concern I have is that this problem is not a problem that is cured. In fact, it isn't cured. It is controlled. But I have not been able to find anything that says that imprisonment is an effective method of dealing with this problem. It does teach the defendant that there are consequences for his behavior, but it doesn't get to the root of the problem.
>
> And so what I achieve when I put somebody like Mr. Milhoan in prison for a specific period of time is to protect the public, which is a very important fact. It is a primary concern that I have in this matter.
>
> But eventually he will be back into society if he goes to prison. And he won't have benefited from any kind of - - I am not aware there is any program within the ODRC that deals with this particular issue on an incarceration basis.
>
> Another thing that has to be considered in Mr. Milhoan's case is that he has a number of several other emotional difficulties to deal with and they are all outlined. I don't need to go through them and put them on the record. I am sure counsel on both sides are aware of that.
>
> That has relevance in the context of it does make him a more challenging individual to deal with than a person that didn't have those emotional conflicts that he has. It doesn't mean that he is impossible to deal with.
>
> My interest is protecting the public. It is also in protecting the public today, tomorrow and into the future. The short-term answer is imprisonment to protect the public. The long-term

answer is I don't think there is an effective way of protecting the public with this type of problem. A better way is to give the type of counseling that's been considered here an opportunity to work.

I think it is appropriate that the first thing I consider in this case is to review the seriousness and recidivism factors as they are set forth in Revised Code 2929.12.

In considering what I should be regarding the impact on the victim, and other relevant factors indicating that the defendant's conduct is more serious than the conduct normally constituting the offense, there are actually nine different categories to review to make this assessment.

But the only two that really apply in this particular type of a case are the physical or mental injuries suffered by the victim of the offense due to the conduct of the offender and whether or not it was exacerbated because of physical or mental condition or age of the victim.

There is a direct implication here. And I think I am safe in taking judicial notice the victim is not only society, but more narrowly the victims are the children that are the subject of these films and downloads. And clearly no one can argue that they aren't being victimized in a very gross fashion.

The other thing to consider is the victim of the offense suffered serious physical or physiological or economic harm. That's probably true. In fact, I would say that is true to one degree or another. In every instance when you have this type of - - I am going to call it reproduction, if you will, different forms.

The other things to consider typically, those would be three through nine, which don't apply to this type of case.

For instance, just picking one at random, offender's occupation, elected office or profession, that sort of thing.

We are not playing with that. I do think that I have * * * addressed the first two things that makes it more likely to consider the offense being repeated by the defendant.

Then the next thing under Item "C" of that statute is I am supposed to consider all of the following items that make this offense less serious.

Well, looking down through, the victim induced or facilitated the offense. That certainly doesn't apply here.

In committing the offense the offender acted under strong provocation. That doesn't apply. In fact, the bottom line is that none of the remaining conditions are applicable here just because of the nature of the crime. It is not because they don't exist, but they just don't exist in this type of an offense. There may be some effort made to update that statute to take into consideration what we are dealing with here.

Having concluded and put on the record the court's views on the requirements of 2929.12, the next thing for me to consider are the elements that are set forth in Section 2929.13. This would be (D)2.

Now, basically, it is presumed that the prison term is appropriate for a felony of the second degree, which is what we are dealing with here. Notwithstanding the presumption of community control may be imposed, the trial court makes both of the following findings:

*The first thing I have to do is a community control sanction or a combination of control sanctions that would adequately punish the offender and protect the public from future crime, because of the applicable factors under Section 2929.12 of the Revised Code indicating a lesser likelihood of recidivism outweigh the applicable factors under that section indicating a greater likelihood of recidivism.*

*The other thing that I need to consider under 13 is whether or not the community control sanction or a combination of sanctions would not demean the seriousness of the offense because of one or more factors under 2929.12 of the Ohio Revised Code and so forth.*

*I am determining that it is appropriate for me to move on from 2929.12. And I do feel that the criteria set forth in that statute have resolved those elements in favor of the defendant, which then moves me into 2929.13.*

Applying the standards that are set forth in that section of the code, with the responsibility of the supervision of Mr. Milhoan resting with the authorities in Jefferson County, and based on the report from the person that has that responsibility, which has more positives to it than negatives, and further based on the fact that Mr. Milhoan will be accepted into the program at the Tri-County Health Center and will successfully complete that program, I do feel that it is appropriate to grant community control in this case.

Now, I am placing Mr. Milhoan on community control for a period of 48 months. The supervision is to be intensive and it is to be administered by Jefferson County. And it is their responsibility to report to the community control authorities in Franklin County any violation or failure or omission that is apart of Mr. Milhoan's supervision.

In addition to that, another condition is that he enter and successfully complete the Tri-County Health Center program.

I want to make it clear, Mr. Belli, your responsibility is to find out whether he, in fact, has successfully completed the assessment program and is admitted into that program. If he is not, then he is in automatic violation of the community control sanctions.

And under those circumstances, it will be my call to make, and it will be between now and the 31st of this month if he is not accepted.

You are telling me you will know tomorrow. If he is not accepted, I will still be here. And I want your client back in this courtroom prepared for sentencing, and the sentencing will be imprisonment. So, it is a condition that he complete that program.

The other conditions that were originally imposed will remain in full force and effect. The primary change is in the length of the supervision. I am also going to modify that portion of what happens if - - let me back up for a second.

Mr. Milhoan, you need to understand if you fail to comply with the conditions of the community control I have just stated and were previously imposed, I have options of making the community control last for a longer period of time. I can

put on additional conditions or I can revoke the community control and put you in prison.

If I put you in prison, it will be for a period of three years. And there are two counts involved here. And those three-year sentences will run consecutive to each other. The fine and costs, those obligation remain the same as they were before.

I want to note on the record that this sentence meets with the strong disapproval of Miss Russo, who has done a very good job of representing the interest of the state.

(Emphasis added.) (Tr. 18-25.)

{¶ 22} Before we consider whether the "record does not support the sentencing court's findings under division (B) or (D) of section 2929.13," R.C. 2953.08(G)(2)(a), we consider whether the trial court in fact made the affirmative findings required by R.C. 2929.13(D)(2)(a) and (b). The italicized passage in the transcript excerpt above establishes that the trial court made the necessary affirmative finding that the imposition of community control sanctions would adequately punish the offender and protect the public from future crime, and would not demean the seriousness of the offenses committed. The court references the weighing of R.C. 2929.12 factors and expressly determines that they favor a downward departure in sentencing. We find that the court made the requisite findings.

{¶ 23} We now turn to the question of whether we can find, by clear and convincing evidence, that the record does not support the court's determination. The state first argues that the above analysis by the court does not effectively apply the balancing of more serious and less serious factors required by R.C. 2929.12(A), because the court did not adequately take note of the fact that, in this case, there are no "less serious" factors present under R.C. 2929.12(C). The state asserts that the basic logical structure underpinning the balancing test of R.C. 2929.12 dictates that at least one "less serious" factor must, in fact, be present in order for the "less serious" to outweigh the "more serious." Absent this, the state urges, R.C. 2929.12(A) cannot be met as a matter of law.

{¶ 24} The state also argues that another "more serious" factor should have been applied by the trial court. The state argues that the downloading of child pornography to a computer, by use of file-sharing peer-to-peer networks, constituted organized criminal activity that satisfies R.C. 2929.12(B)(7). The state also argues that the court failed to consider the fact that appellant pleaded guilty to a total of eight counts, including four second-degree felonies, out of the more numerous indictments arising from the large quantity of child pornography discovered on his home computer equipment.

{¶ 25} With respect to the state's argument that the balancing test could not be resolved in appellee's favor as matter of law, the court did determine that, because of the child pornography nature of the offense, in addition to the generalized harm caused to society, the specific victims were involved in the form of the children who were made to be the object of the abuse depicted in the pornography. Thus, the "more serious" factors of R.C. 2929.12(B)(1) and (2), physical or mental injuries suffered by the victim and the physical or mental condition or age of the victim, as well as the physical or psychological harm suffered as a result of the offense, were present. The court went on to note that, because the nature of the offense, none of the enumerated factors under R.C. 2929.12(C) were particularly relevant. The court nonetheless found that the "less serious" outweighed the "more serious."

{¶ 26} We agree with the trial court's observation that most of the specific "less serious" factors under R.C. 2929.12(C) are not likely to apply to crimes arising from possession of child pornography. There is little chance of finding that the victim facilitated the offense (R.C. 2929.12(C)(1)) or that the offender acted under strong provocation (R.C. 2929.12(C)(2)). Nor can one logically conclude that the offender did not cause or expect to cause harm (R.C. 2929.12(C)(3)), since the harm from this type of crime is both a generalized injury to society and is imputable from the abuse suffered by victims at the time of creation of pornography.

{¶ 27} Nonetheless, to accept the state's argument is to find that for all crimes of this type the weighing of factors under R.C. 2929.12 is futile. Since the legislature has not specifically exempted such crimes from eligibility for a downward departure in sentencing, we do not accept the postulated premise that prison is mandatory in such cases. Furthermore, the state's position renders meaningless the "any other relevant

factors" language contained in R.C. 2929.12(C), as well as the general catch-all "less serious" mitigating factors contained in R.C. 2929.12(C)(4). The record before us does, in fact, present extensive evidence relied upon by the trial court regarding appellee's mental, neurological, and emotional conditions that could be assessed under these broad provisions. While the state points out that these conditions are less severe than in other cases in which a downward departure was found appropriate, *see, e.g., State v. Stewart*, 8th Dist. No. 84157, 2004-Ohio-5612 (paranoid schizophrenia), the trial court was not obligated to share that opinion as a matter of law.

{¶ 28} With respect to the likelihood of recidivism, the state argues that the court again failed to particularize its consideration of the enumerated statutory factors under R.C. 2929.12(D) and (E). The state asserts that, had the court undertaken an explicit analysis of these factors, it would have found at least three factors indicating a greater risk of recidivism were present: an absence of genuine remorse (including appellee's minimization of his own conduct), denial of having done anything illegal, and the enormous quantity of child pornography present on appellee's computer equipment. The state points out that repeated commission of the same sex offense demonstrates a compulsion and likelihood to re-offend, citing *State v. Bartis*, 10th Dist. No. 97APA05-600 (Dec. 9, 1997), affirmed 84 Ohio St.3d 9 (1998). The state also argues that the trial court did note one factor that indicates a greater likelihood of recidivism, when the court described appellant's behavior as a condition that cannot be cured but, at best, controlled.

{¶ 29} The state also argues that the court created a false dilemma when the court concluded that effective control of appellee's condition could only be obtained through types of treatment that were unavailable in prison. The state then goes on to assert that multiple sex offender treatment programs exist. The state further asserts that appellee could obtain the requisite treatment once he completed his prison term, undergoing his treatment as part of a post-release control sanction.

{¶ 30} It is clear that the court in fact devoted the bulk of its rationale in its decision to weighing the risk of recidivism, concluding that community control in fact presented the best option for reducing the risk of recidivism from this particular defendant. During the course of the first day's hearing, the judge noted that opportunities for effective counseling and rehabilitation in prison were "slight to none." (Dec. 4, 2012

Tr. 18.)   While the prosecution vigorously disagreed with this proposition both at the hearing and in the present appeal ("an internet search easily refutes this assumption," state's reply brief at 12), we have no specific record evidence before us otherwise and defer to the trial court's perception of the opportunities for effective treatment. In contrast, counsel for appellee was able to assure the court by the time of the December 20th hearing that appellee had been accepted into a comprehensive treatment program near his current home in Jefferson County.

{¶ 31} The court also noted that appellee was severely beaten by other inmates in the Franklin County Jail upon his initial arrest.  Appellee's mother stated that, due to his neurological conditions (Tourette's syndrome, inter alia) and social deficits, he lacked any functional skills to avoid such confrontations and violence while incarcerated. The court decided that appellee's expressed extreme fear of returning to prison would serve as a powerful incentive for appellee to adhere to his conditions of community control and pursue his treatment.   The state concedes that "the record is silent on what safety measures are or are not available in prison."  (State's reply brief at 13.)  More to the point, appellee's personal safety in prison was not the driving concern expressed by the trial court.  Rather, the court stressed the likelihood that appellee's concern for his own safety, should he violate the terms of his sentence, was a strong factor supporting a decreased likelihood of recidivism.

{¶ 32} We conclude that, under the clear and convincing standard of review, there was sufficient evidence before the trial court to support this determination.  The court's observations regarding appellee's emotional and neurological deficits, the likelihood of appellee benefiting from rehabilitation programs while in prison, and his participation in such programs, with the support of his family, while under community control, are supported by the record.  The trial court's finding that the sentence imposed would effectively lessen the likelihood of recidivism is supported by the record.

{¶ 33} We reach this conclusion with due consideration of the limits conferred upon this court and the corresponding latitude afforded the trial court in sentencing matters.  Our role as a reviewing court on appeal does not permit us to substitute our judgment for that of the trial court in assessing the weight and credibility of matters in the record.  *Burton.* The trial court here applied the proper statutory framework, considered

the appropriate factors, and the record provides the requisite measure of support for the trial court's findings. Under the standard of review imposed by statute, it is not the role of this court to substitute its judgment for the trial court simply because members of this court might have made a different decision.  *Potter v. Baker*, 162 Ohio St. 488 (1955); *State v. Dawson*, 10th Dist. No. 00AP-1052 (Dec. 11, 2001); *State v. Weaver*, 10th Dist. No. 84AP-937 (Dec. 12, 1985).

{¶ 34} In sum, because we find that the record does not present clear and convincing evidence that the trial court's R.C. 2929.13(D)(2) findings are unlawful or unsupported by the evidence, the state's first assignment of error is overruled.

{¶ 35} The state's second assignment of error urges us to find that, as a matter of law, the trial court could not, on these facts, have found that a downward deviation was appropriate.  Our conclusion with respect to the first assignment of error renders this assignment of error moot.  Moreover, as we have observed in comparable cases, "we have consistently rejected similar arguments by the state and we do so here."  *Fisher* at ¶ 10. We decline to infringe upon the trial court's domain as the initial finder of fact and decider of issues that the statute clearly places as a matter of original jurisdiction before the trial court.  *See, generally, Milhoan I* at ¶ 9.  The state's second assignment of error is overruled.

{¶ 36} In accordance with the foregoing, the state's two assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas sentencing appellee to a period of community control for his convictions is affirmed.

*Judgment affirmed.*

SADLER, P.J., and DORRIAN, J., concur.

GREY, J., retired of the Fourth Appellate District, assigned to active duty under authority of the Ohio Constitution, Article IV, Section 6(C).

_____