[Cite as *State v. Connor*, 2020-Ohio-5519.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio, :

    Plaintiff-Appellant, :

                                        No. 19AP-358

v. : (C.P.C. No. 18CR-771)

Raymond Conner, : (REGULAR CALENDAR)

    Defendant-Appellee. :

---

D E C I S I O N

Rendered on December 3, 2020

---

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Steven L. Taylor*, for appellant.

**On brief:** *Yeura R. Venters*, Public Defender, and *Robert D. Essex*, for appellee.

---

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Plaintiff-appellant, State of Ohio, appeals a sentence of three years of community control imposed by the trial court following a plea by defendant-appellee, Raymond Conner, to one count of burglary and one count of failure to appear. Because we find that the trial court's discussion, in the context of the full record, adequately shows that it considered the seriousness of the offense and the likelihood of whether the defendant would recidivate or more simply put, go back to bad behavior, we are unable find, "clearly and convincingly," that "the record does not support the sentencing court's" judgment. R.C. 2953.08(G)(2)(a). We therefore overrule the State's assignment of error and affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On February 15, 2018, a Franklin County Grand Jury indicted Conner for one count of aggravated burglary. (Feb. 15, 2018 Indictment.) According to the undisputed statement of facts offered in support of Conner's eventual guilty plea, the indictment

stemmed from an incident in which Conner kicked in the back door of his ex-girlfriend's residence, entered, threatened to "fuck [her] up," and then left. (Apr. 2, 2019 Plea Hearing Tr. at 12, filed June 26, 2019.) After initially pleading "not guilty" and then failing to appear on one occasion, Conner agreed to plead guilty to a stipulated lesser offense of burglary and an additional count of failure to appear. (Feb. 23, 2018 "Not Guilty" Plea Form; Apr. 2, 2019 "Guilty" Plea Form; Apr. 2, 2019 Plea Hearing Tr. at 13-14.)

{¶ 3} The trial court held a sentencing hearing on May 3, 2019. (May 3, 2019 Sentencing Hearing Tr., filed June 26, 2019.) During the hearing the State argued that, although the victim was traveling and unavailable to be present or speak at the hearing, the victim had indicated that she was terrified of Connor and asked the court to imprison him for her protection. *Id.* at 2-4. The defense presented arguments and statements by Conner and his mother to the effect that the offense was the result of intoxication and anger issues, that Conner had sought treatment for both problems, and that he would not, as a result of these efforts, be likely to reoffend. *Id.* at 4-10. The trial court agreed that the offense was a result of Conner's anger issues, power issues as relates to women in his life, and alcohol problems. *Id.* at 12-13. Rather than impose prison, the trial court imposed community control and informed Conner that if community control were revoked for failure to follow its conditions, Conner would serve a 4-year term of imprisonment on the burglary offense and a concurrent 18-month sentence on the failure to appear offense. *Id.* at 10-12. Conner's term of community control required was for 3 years of intensive supervision involving, and among other requirements, that he stay away from his ex-girlfriend, serve a to-be-determined length of time at a Community Based Correctional Facility ("CBCF"), submit to urine screens, maintain employment, and attend behavior programs, domestic violence counseling, and 3 Alcoholics Anonymous meetings per week. *Id.*

{¶ 4} At the request of the State, before issuing a judgment entry in the case, the trial court reconvened to more explicitly explain its reasoning for placing Conner on community control rather than outright sentencing him to a prison term. (May 15, 2019 Hearing Tr. at 2-3, filed June 26, 2019.) The Court had ordered and reviewed a pre-sentence investigation and at this hearing stated its reasoning for imposing community control:

> At the time of sentencing the first thing that the Court did review was the Ohio Risk Assessment tool as it related to

Mr. Conner. Mr. Conner's risk assessment score was a 23, which placed him in a moderate range risk for recidivism, also indicated that the most appropriate placement was with the chemical dependency caseload.

And, granted, it was an offense that had a presumption for prison. The evaluation that was completed had indicated that even though it was a case where there was a presumption for prison that that presumption was not appropriate at this time.

So what the Court did look at was Mr. Conner's prior criminal history. His prior criminal history, the only previous felony that he had been convicted of was a nonsupport of dependents case from 2012. He successfully completed community control in that case was my recollection of the information that had been provided to the Court.

His prior convictions have all been misdemeanor offenses, disorderly conduct M4 back in 1995, disorderly conduct M1, but there's not an M1 disorderly conduct. I don't know if that's an MM or M4, but disorderly conduct 1998. There was a domestic violence conviction in '05, violation of protection order in '05, disorderly conduct in '10, and then the nonsupport in '12.

So in looking at the risk assessment tool and then the factors that the Court needed to consider, the Court found that the recidivism factors as well as the ORAS ruled in favor of community control and against incarceration. The only seriousness factor was the relationship with the victim did facilitate the offense.

So taking into consideration the defendant's prior criminal history, one prior felony offense in which he successfully completed community control, the moderate score on the risk assessment tool of 23, indicating that a moderate risk of recidivism, is the reason why the Court ultimately agreed to have -- well, not agreed, but the reason why the Court placed Mr. Conner in Community Based Correctional Facility program.

All right. Is there anything else that the State would like to add on the record based upon what the Court has indicated at this time.

[PROSECUTION]: No, Your Honor. Thank you for your time.

*Id.* at 3-5.

{¶ 5} The State now appeals the sentence imposed by the trial court.  *See* R.C. 2953.08(B)(1).

## II. ASSIGNMENT OF ERROR

{¶ 6} The State presents a single assignment of error for review.

THE TRIAL COURT ERRED IN IMPOSING COMMUNITY CONTROL WHEN IT FAILED TO MAKE THE REQUIRED FINDINGS FOR OVERCOMING THE PRESUMPTION OF PRISON.

## III.  DISCUSSION

{¶ 7} In sentencing a defendant for a second-degree felony, a trial court must consider division (D) of R.C. 2929.13, which provides in relevant part:

(1) [F]or a felony of the * * * second degree * * * it is presumed that a prison term is necessary in order to comply with the purposes and principles of sentencing under section 2929.11 of the Revised Code. * * *

(2) Notwithstanding the presumption established under division (D)(1) of this section * * * the sentencing court may impose a community control sanction or a combination of community control sanctions instead of a prison term on an offender for a felony of the * * * second degree * * * if it makes both of the following findings:

(a) A community control sanction or a combination of community control sanctions would adequately punish the offender and protect the public from future crime, because the applicable factors under section 2929.12 of the Revised Code indicating a lesser likelihood of recidivism outweigh the applicable factors under that section indicating a greater likelihood of recidivism.

(b) A community control sanction or a combination of community control sanctions would not demean the seriousness of the offense, because one or more factors under section 2929.12 of the Revised Code that indicate that the offender's conduct was less serious than conduct normally constituting the offense are applicable, and they outweigh the applicable factors under that section that indicate that the offender's conduct was more serious than conduct normally constituting the offense.

R.C. 2929.13(D).

{¶ 8} In reviewing an appeal regarding whether a trial court made required sentencing findings, an appellate court "shall review the record, including the findings underlying the sentence or modification given by the sentencing court." R.C. 2953.08(G)(2). The Ohio Revised Code then explains the standard of review:

> * * * The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
>
> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
>
> (b) That the sentence is otherwise contrary to law.

*Id.* As we have previously explained, this statute requires that we essentially analyze " '(1) whether the trial court expressly made the required findings, and (2) whether we determine by clear and convincing evidence that the record does not support those findings or is otherwise contrary to law.' " *State v. Will*, 10th Dist. No. 18AP-759, 2019-Ohio-3906, ¶ 13, quoting *State v. Fisher*, 10th Dist. No. 13AP-236, 2013-Ohio-4063, ¶ 7, citing *State v. Milhoan*, 10th Dist. No. 13AP-74, 2014-Ohio-310, ¶ 16. If we find the standard to be met, we are empowered to "increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing." R.C. 2953.08(G)(2).

{¶ 9} The State does not contend that the sentence in this case is contrary to law in the sense of not being within the authorized range permitted for the offenses of conviction. R.C. 2953.08(G)(2)(a). Rather, the State's concern is that the trial court failed to make the findings necessary to justify its decision not to impose a prison term and that the record does not support such findings. R.C. 2953.08(G)(2)(b). We have frequently "recognize[d] that the mandatory sentencing guidelines do not require talismanic words from the sentencing court. Nevertheless, it must be clear from the record that the trial court engaged in the appropriate analysis." *State v. Overmyer*, 10th Dist. No. 09AP-945, 2010-Ohio-2072, ¶ 7. Thus, the question we must answer is whether the record indicates that the trial court considered the recidivism and seriousness factors and justifiably concluded that the factors indicating that Conner was less likely to recidivate than more likely to do so and that

the record supports a finding that the offense was of less serious form among similar offenses than a more serious form. *See Will* at ¶ 13; R.C. 2953.08(G)(2)(a); R.C. 2929.13(D)(2)(a) and (b).

{¶ 10} The recidivism factors set out in R.C. 2929.12 are as follows:

(D) The sentencing court shall consider all of the following that apply regarding the offender, and any other relevant factors, as factors indicating that the offender is likely to commit future crimes:

(1) At the time of committing the offense, the offender was under release from confinement before trial or sentencing; was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code; was under post-release control pursuant to section 2967.28 or any other provision of the Revised Code for an earlier offense or had been unfavorably terminated from post-release control for a prior offense pursuant to division (B) of section 2967.16 or section 2929.141 of the Revised Code; was under transitional control in connection with a prior offense; or had absconded from the offender's approved community placement resulting in the offender's removal from the transitional control program under section 2967.26 of the Revised Code.

(2) The offender previously was adjudicated a delinquent child pursuant to Chapter 2151. of the Revised Code prior to January 1, 2002, or pursuant to Chapter 2152. of the Revised Code, or the offender has a history of criminal convictions.

(3) The offender has not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child pursuant to Chapter 2151. of the Revised Code prior to January 1, 2002, or pursuant to Chapter 2152. of the Revised Code, or the offender has not responded favorably to sanctions previously imposed for criminal convictions.

(4) The offender has demonstrated a pattern of drug or alcohol abuse that is related to the offense, and the offender refuses to acknowledge that the offender has demonstrated that pattern, or the offender refuses treatment for the drug or alcohol abuse.

(5) The offender shows no genuine remorse for the offense.

(E) The sentencing court shall consider all of the following that apply regarding the offender, and any other relevant factors, as factors indicating that the offender is not likely to commit future crimes:

(1) Prior to committing the offense, the offender had not been adjudicated a delinquent child.

(2) Prior to committing the offense, the offender had not been convicted of or pleaded guilty to a criminal offense.

(3) Prior to committing the offense, the offender had led a law-abiding life for a significant number of years.

(4) The offense was committed under circumstances not likely to recur.

(5) The offender shows genuine remorse for the offense.

It is apparent in this case that the trial court did not explicitly discuss each of the factors set out in R.C. 2929.12 related to the issue of recidivism. (May 3, 2019 Sentencing Hearing Tr. in passim; May 15, 2019 Hearing Tr. in passim.)

{¶ 11} The record shows, however, that, although the trial court uttered no talismanic words to quote or invoke the factors, the court considered the issues related to the statutory factors. The trial court acknowledged that Conner had a history of criminal convictions. (May 15, 2019 Hearing Tr. at 3-4.) R.C. 2929.12(D)(2) and (E)(2). But it noted that the convictions were minor and quite old at the time of sentencing and that Conner had performed well on supervision before, contrary to division (D)(3) and (D)(1). (May 15, 2019 Hearing Tr. at 3-4.) R.C. 2929.12(D)(1) and (3). Although the trial court acknowledged that alcohol abuse appeared to have been related to the offense, the sentencing hearing transcript indicates that Conner acknowledged the problem and had sought treatment for both that problem and his anger issues, thus rendering division (D)(4) inapplicable. (May 3, 2019 Sentencing Hearing Tr. at 8-13.) R.C. 2929.12(D)(4). In other words, only the fact that Conner had prior convictions suggested he was likely to recidivate.

{¶ 12} The trial court remarked about the age of Conner's convictions, suggesting he had been living a more law abiding life in recent years. (May 15, 2019 Hearing Tr. at 3-4.) R.C. 2929.12(E)(3). Likewise, though the trial court did not expressly address whether the circumstances of the offense were such that it was not likely to reoccur, it did find that Conner's alcohol and anger issues were causes of the offense and determined to assist Conner with directly addressing these issues with intensive community control supervision and intensive programming requirements, including placement in the CBCF, which we acknowledge is a facility involving confinement for which jail-time credit is afforded. *State*

*v. Napier*, 93 Ohio St.3d 646, 648 (2001). Because the trial court imposed these conditions of community control, the record supports that the trial court believed that this combination of conditions and expenditure of state resources suggested he would be less likely to reoffend. (May 15, 2019 Hearing Tr. at 3; May 3, 2019 Sentencing Hearing Tr. at 11-13.) R.C. 2929.12(E)(4).

{¶ 13} Though the trial court did not specifically comment on it, but instead imposed intensive supervision with strict conditions, including placement in CBCF, Conner's frank expression of remorse for his actions were evidence of his motivation to change that the trial court took into account when setting the conditions of community control. (May 3, 2019 Sentencing Hearing Tr. at 8.) R.C. 2929.12(D)(5), and (E)(5). In short, the record makes clear that the trial court considered the recidivism factors and concluded that with appropriate community supervision, the factors "indicating a lesser likelihood of recidivism outweigh[ed] the applicable factors * * * indicating a greater likelihood of recidivism," as supported by the record. R.C. 2929.13(D)(2)(a) and 2953.08(G)(2)(a).

{¶ 14} The seriousness factors set forth in R.C. 2929.12 are these:

> (B) The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is more serious than conduct normally constituting the offense:
>
> (1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim.
>
> (2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.
>
> (3) The offender held a public office or position of trust in the community, and the offense related to that office or position.
>
> (4) The offender's occupation, elected office, or profession obliged the offender to prevent the offense or bring others committing it to justice.
>
> (5) The offender's professional reputation or occupation, elected office, or profession was used to facilitate the offense or is likely to influence the future conduct of others.

(6) The offender's relationship with the victim facilitated the offense.

(7) The offender committed the offense for hire or as a part of an organized criminal activity.

(8) In committing the offense, the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion.

(9) If the offense is a violation of section 2919.25 or a violation of section 2903.11, 2903.12, or 2903.13 of the Revised Code involving a person who was a family or household member at the time of the violation, the offender committed the offense in the vicinity of one or more children who are not victims of the offense, and the offender or the victim of the offense is a parent, guardian, custodian, or person in loco parentis of one or more of those children.

(C) The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is less serious than conduct normally constituting the offense:

(1) The victim induced or facilitated the offense.

(2) In committing the offense, the offender acted under strong provocation.

(3) In committing the offense, the offender did not cause or expect to cause physical harm to any person or property.

(4) There are substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense.

{¶ 15} Most of the seriousness factors to be considered did not apply in Conner's case. The record does not show that the victim, who did not attend the sentencing hearing, suffered serious physical, psychological, or economic harm from Conner's actions, or that such harm was worsened by her age or physical or mental condition (although the prosecutor stated at the sentencing hearing that she was terrified of him, the prosecutor's statement being the only indication of mental harm). (May 3, 2019 Sentencing Hearing Tr. at 2-4.) R.C. 2929.12(B)(1) and (2). Conner did not occupy a position of trust or office in relation to the offense. R.C. 2929.12(B)(3) through (5). Although the trial court remarked that his relationship with the victim facilitated the offense and although a prior romantic

relationship with the victim may have motivated the offense, the prior relationship would not have "facilitated"[1] this offense. There is no evidence that he, for example, had a key to her place, or that he was staying there. After he kicked in her door and entered, he shouted a threat and then walked away. (May 15, 2019 Hearing Tr. at 4.) R.C. 2929.12(B)(6). Nor was the offense a hate crime, part of organized crime, or a crime involving a household member. R.C. 2929.12(B)(7) through (9). The trial court's recognition of the fact of the prior relationship as a seriousness factor points only to the identity of the victim, but nothing appears in the record that the former relationship facilitated any other aspect of the crime. The record essentially does not support any seriousness factor listed in R.C. 2929.12(B).

{¶ 16} Regarding the factors that show the offense was less serious, there is no indication in the record that Conner was provoked or that the victim induced or facilitated the offense, rendering those mitigating factors inapposite. R.C. 2929.12(C)(1) and (2). There is also no indication in the record that Conner went to the victim's house that day expecting to cause harm to persons or property and it is not clear from the record whether the acts of kicking the door open in a drunken state and then yelling threats actually caused any "physical harm" to the door or the victim, except to create fear. (May 3, 2019 Sentencing Hearing Tr. at 4; Apr. 2, 2019 Plea Hearing Tr. at 12.) R.C. 2929.12(C)(3). The trial court's acknowledgement of Conner's prior misdemeanors indicates that the court considered this offense in light of his past criminal behavior and did not see an appreciable escalation in the facts as agreed to by the parties. The statement of facts in the record and the trial court's statement about Conner's criminal history support a finding by the court that Conner "did not cause or expect to cause physical harm to any person or property." R.C. 2929.12(C)(3)

{¶ 17} R.C. 2929.12(B) through (E) also permits a court to consider "any other relevant factors" and, with respect to mitigation in particular, whether there were "other substantial grounds to mitigate" the offense. R.C. 2929.12(C)(4). Under that broad authority to consider mitigation and "any other relevant factors," the record supports the view that this was not an especially serious form of burglary. Drunkenly kicking in the door

---

[1] "Facilitate" is defined as, "[t]o make (an action, process, etc.) easy or easier; to promote, help forward; to assist in bringing about (a particular end or result)." *OED Online*, Oxford University Press, September 2020, www.oed.com/view/Entry/67460 (accessed Dec. 2, 2020).

of an individual with whom Conner has previously been romantically involved to yell threats and obscenities is criminal behavior. But when that conduct is considered on the spectrum of what constitutes the crime of burglary, that incident is substantially less serious than other cases (in which, for example, an offender would enter a home and inflict injury or rob).

{¶ 18} Despite the fact that the trial court construed one of the seriousness factors to be present, the record supports the view that none of the factors indicated that the offense was more serious than usual form of the crime at that level of felony. *See supra* at ¶ 15. The record also supports that the trial court recognized as many as two factors were present showing that the offense was of a less serious variety. *See supra* at ¶ 16-17. Granted, the trial court could have been more explicit. However, we cannot find "clearly and convincingly" that "the record does not support the sentencing court's findings" when it chose not sentence Conner to prison. R.C. 2953.08(G)(2)(a). That is, under R.C. 2953.08(G)(2)(a), R.C. 2929.13(D), and R.C. 2929.12(B) through (E), the record adequately demonstrates that the trial court analyzed and considered the statutory factors to overcome the presumption of prison as to the offense being a less serious form of the offense. R.C. 2953.08(G)(2)(a); *see also* R.C. 2929.13(D)(2)(b).

{¶ 19} The State's sole assignment of error is overruled.

## IV. CONCLUSION

{¶ 20} The trial court's discussion in the context of the full record was sufficient to demonstrate its findings that the defendant, under intensive supervision, a CBCF sentence and intensive programmatic conditions was not likely to reoffend and that the offense was not among the more serious forms of the offense. We cannot conclude "clearly and convincingly" from the court's record that the sentencing court's judgment and findings did

not overcome the presumption of prison.  We therefore overrule the State's assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BEATTY BLUNT, J., concurs.
BROWN, J., dissents.

BROWN, J., dissenting.

{¶ 21}  Being unable to concur with the majority's determination that the trial court made the necessary findings required to impose a community control sentence, I respectfully dissent.

{¶ 22}  In order to overcome the presumption in favor of a prison term and to impose a community control sanction, the sentencing court is required to make "two findings." *State v. Murnahan*, 2d Dist. No. 2018-CA-6, 2018-Ohio-4762, ¶ 12.  *See also State v. Milhoan*, 10th Dist. No. 13AP-74, 2014-Ohio-310, ¶ 6 (sentencing court must make both of the findings under R.C. 2929.13(D)(2)(a) and (b) "before it may deviate from the presumption that a prison term should be imposed").  First, "the court must find that a community-control sanction 'would adequately punish the offender and protect the public from future crime, because the applicable factors under section 2929.12 of the Revised Code indicating a lesser likelihood of recidivism outweigh the applicable factors under that section indicating a greater likelihood of recidivism.' "  *Murnahan* at ¶ 12, quoting R.C. 2929.13(D)(2)(a).  Second, "the court must find that a community-control sanction 'would not demean the seriousness of the offense, because one or more factors under section 2929.12 of the Revised Code that indicate that the offender's conduct was less serious than conduct normally constituting the offense are applicable, and they outweigh the applicable factors under that section that indicate that the offender's conduct was more serious than conduct normally constituting the offense.' "  *Id.*, quoting R.C. 2929.13(D)(2)(b).

{¶ 23}  Because appellee was convicted of a second-degree felony, there was a presumption in favor of a prison term.  In addressing that presumption, the trial court noted during the sentencing hearing that appellee had a moderate range of risk assessment score (of 23), that he had one prior felony, and that he had misdemeanor convictions for disorderly conduct, domestic violence, and violation of a protection order.  The court cited appellee's "prior criminal history," as well as the "moderate score on the risk assessment

tool," as the reason why it was placing him in a community based correctional facility.  (May 26, 2019 Tr. at 4.)

{¶ 24}  On review of the record, I agree with the state that the trial court's findings fall short of those required by statute.  As to the recidivism factors, while the trial court cited appellee's prior criminal history and moderate risk score as the basis for not imposing a prison term, the court did not make the finding required by R.C. 2929.13(D)(2)(a) that a community sanction would adequately punish appellee and protect the public from future crime (i.e., because the applicable factors under R.C. 2929.12 indicating a lesser likelihood of recidivism outweigh the applicable factors indicating a greater likelihood of recidivism). *See, e.g., State v. Fisher*, 10th Dist. No. 13AP-236, 2013-Ohio-4063, ¶ 8 (remanding for resentencing to comply with statutory sentencing guidelines; although trial court "found that defendant has 'a low risk of potentially reoffending,' which indicates the court considered he had a lesser likelihood of recidivism, the court did not make the finding required by R.C. 2929.13(D)(2)(a) that the community control sanction would adequately punish the offender and protect the public from future crime").

{¶ 25}  With respect to the seriousness factors under R.C. 2929.12(B) and (C), the trial court found the only applicable "more serious" factor to be that the offender's relationship with the victim facilitated the offense (under R.C. 2929.12(B)(6)).  The court, however, did not discuss any of the less serious factors under R.C. 2929.12(C), nor did the court make the finding under R.C. 2929.13(D)(2)(b) that the community control sanction would not demean the seriousness of appellee's offense (i.e., because one or more of the factors indicating appellee's conduct was less serious than conduct normally constituting the offense are applicable and that they outweigh the applicable factors indicating that the conduct was more serious than conduct normally constituting the offense).  *See, e.g., State v. Martin*, 10th Dist. No. 08AP-1103, 2009-Ohio-3485, ¶ 7 (remanding matter for resentencing; although trial court "said at the sentencing hearing that community control 'is the best way to protect the public,' the court did not find that, under the R.C. 2929.12 factors, a community control sanction would adequately punish appellee and protect the public from future crime," nor did the court "find at the sentencing hearing that, under the R.C. 2929.12 factors, a community control sanction would not demean the seriousness of appellee's offense").

{¶ 26} While this court has noted "the mandatory sentencing guidelines do not require talismanic words from the sentencing court," we have "[n]evertheless" found that "it must be clear from the record that the trial court engaged in the appropriate analysis." *State v. Overmyer*, 10th Dist. No. 09AP-945, 2010-Ohio-2072, ¶ 7.  In the present case, because a review of the sentencing hearing indicates the trial court did not make either of the two findings as required by R.C. 2929.13(D)(2)(a) and (b) (i.e., that a sentence of community control would adequately punish the offender and protect the public from future crime, and not demean the seriousness of the offense) in order to overcome the presumption of incarceration, "it is not clear that the trial completed the required analysis." *Id.*  Accordingly, I would sustain the state's assignment of error and remand for resentencing for the trial court to make the necessary statutory findings.

———————————