[Cite as *Puljic v. State Farm Fire & Cas. Co.*, 2017-Ohio-8808.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| ANKICA PULJIC, et al., | : | **O P I N I O N** |
| Plaintiffs-Appellants, | : | |
| - vs - | : | **CASE NO. 2017-L-067** |
| STATE FARM FIRE AND CASUALTY COMPANY, | : | |
| | : | |
| Defendant-Appellee. | : | |
| | : | |

Civil Appeal from the Lake County Court of Common Pleas, Case No. 2016 CV 000684.

Judgment: Affirmed.

*Richard K. Wilcox,* 14655 Balch Road, Madison, OH 44057 (For Plaintiffs-Appellants).

*Mark H. Gams,* Gallagher Gams Pryor Tallan & Littrell, 471 East Broad Street, 19th Floor, Columbus, OH 43215 (For Defendant-Appellee).

CYNTHIA WESTCOTT RICE, P.J.

{¶1} Appellants, Ankica Puljic, et al., appeal from the judgment of the Lake County Court of Common Pleas, entering summary judgment in favor of appellee, State Farm Fire and Casualty Company. We affirm.

{¶2} On July 19, 2013, a significant rain storm passed through Lake County, Ohio, releasing between four and seven inches of rain throughout the region. The storm caused flooding throughout the county. The following morning, appellant, Ankica

Puljic, awoke and inspected her basement for flooding. She inspected the basement drains and nothing appeared unusual. Moreover, she viewed the area where the sewer line was located and noticed nothing out of the ordinary. As she scanned the next room, she noticed her ironing board was on the floor and the carpet was raised. The carpet was neither torn nor wet. After removing the carpet Mrs. Puljic and her husband, appellant, Tom Puljic, discovered the concrete floor had a significant crack and had risen.

{¶3} Appellants called appellee who, on August 19, 2013, initiated an inspection. As a result of the inspection, the claim was denied pursuant to coverage exclusions in appellants' policy. The policy specifically excluded damage resulting from water below the surface of the ground. The policy also excluded loss to property as a result of the cracking, bulging, or expansion of floors. Appellants sought another inspection and appellee denied the claim again. After a third denial in April 2014, appellee retained David S. Mallory, a professional engineer, to inspect appellants' property.

{¶4} Appellee based its previous denials on its conclusion that subsurface water had pushed the subgrade (i.e., the soil with small amounts of stone underneath the concrete) upward, causing the concrete to heave and crack. Mr. Mallory opined the concrete slab floor cracked and separated due to hydrostatic pressure in the subgrade under the floor. The subgrade under the floor was saturated, suggesting water infiltration. There were no leaks from the municipal water service line and no water leaks in the plumbing lines were observed. The soil surrounding the residence was in a continual state of saturation for a continued 16-day period. During this period, water

migrated along the basement walls to the level of the basement floor, saturated the floors subgrade, and imparted an upward force under the concrete. The force exceeded the floor's strength thereby cracking and separating the same. Omissions of rebar in the concrete and the absence of a sump pump were contributing factors to the damage.

{¶5} Appellants subsequently hired Joseph Nyzen, a professional engineer, to inspect the premises. Mr. Nyzen agreed with Mr. Mallory that the damage to the floor was a result of water pressure under the floor. Specifically, he noted "under-slab water pressure certainly caused the eruption." Mr. Nyzen took issue, however, with Mr. Mallory's conclusions as to how the pressure developed, primarily due to the inaccurate weather data used by Mr. Mallory. Further, Mr. Nyzen observed that drainage pipe misalignment may have contributed to the buildup of pressure which ultimately led to the slab's eruption.

{¶6} Appellants filed the underlying complaint seeking damages for, inter alia, breach of contract wrongful cancellation of the contract. They also sought declaratory judgment on the breach issue. Appellee denied the allegations, maintaining the claims were barred by the terms and conditions of the insurance contract. After discovery, appellee filed a motion for summary judgment. In support of its motion, appellee relied upon the language of the policy which provides an exclusion for losses occurring as a result of "settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundation, walls floors, roofs or ceilings." Appellee further relied upon an exclusion of coverage for water damage, defined as "water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building,

3

sidewalk, driveway, foundation, swimming pool or other structure." Appellee also relied upon an exclusion for loss caused by "defect, weakness, inadequacy, fault or unsoundness in: (1) planning, zoning, development, surveying, siting; [and] (2) specifications, workmanship, construction, grading, compaction."

{¶7} Appellee argued the policy excludes damage for hydrostatic or subsurface water pressure that causes the basement floor to lift, crack, and bulge. Appellee noted, after Mr. Mallory's inspection, its claim representative concluded that subsurface water caused the basement slab to crack. Because the loss was excluded by the contract, appellee asserted it was entitled to judgment as a matter of law on the breach claim. Appellee further argued it was entitled to judgment as a matter of law on the wrongful cancellation claim because it permissibly elected not to renew the coverage, as opposed to cancelling the contract.

{¶8} In response, appellants argued appellee improperly broadened the scope of the first exclusion, barring coverage for damage due to settling, cracking, shrinking, bulging, or expansion of pavement and floors. They noted that two experts examined the same basement and used different language to describe their findings. To wit, appellants noted Mr. Mallory described the damage as cracked and separated concete, while Mr. Nyzen, who is less familiar with appellee's preferred terms, described the damage as "heaved and broken," "erupted," and "uplifted." Appellants maintained the floor heaved and displaced vertically, which compromised the structural integrity of the foundation. In appellants' view, nothing in the language of the exclusion describes the phenomenon that occurred in their home. Appellants additionally maintained appellee's

4

cancellation or non-renewal of the policy was contrary to law because, in their view, it occurred as retaliation for appellants' challenge of appellee's denial of their claim.

{¶9} After considering each party's positions, the trial court concluded there were no genuine issues of material fact to be litigated on appellants' breach of contract claim. The court determined the contract excluded the damage at issue and therefore appellee was entitled to judgment as a matter of law. Similarly, the trial court determined appellee was entitled not to renew the policy at the end of the policy's term. Hence, the court awarded appellee summary judgment on appellants' claim for wrongful cancellation. Appellant's appeal the judgment, assigning the following error:

{¶10} "The trial court erred in granting defendant-appellee's motion for summary judgment on appellants first, fourth and fifth claims of their amended verified complaint and finding appellants failed to point to evidence in the record that there is a genuine issue of material fact."

{¶11} Summary judgment is a procedural tool that terminates litigation and thus should be entered with caution. *Davis v. Loopco Industries, Inc.,* 66 Ohio St.3d 64, 66 (1993). Summary judgment is proper where (1) there is no genuine issue of material fact remaining to be litigated; (2) the movant is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and, viewing the evidence in the non-moving party's favor, that conclusion favors the movant. *See, e.g.,* Civ.R. 56(C).

{¶12} When evaluating a motion for summary judgment, the trial court may not weigh the evidence or select among reasonable inferences. *Dupler v. Mansfield Journal Co.,* 64 Ohio St.2d 116, 121 (1980). Instead, all questions must be resolved in the

5

nonmoving party's favor. *Murphy v. Reynoldsburg,* 65 Ohio St.3d 356, 359 (1992). Hence, a trial court must overrule a motion for summary judgment where conflicting evidence exists and alternative reasonable inferences can be drawn. *Pierson v. Norfork Southern Corp.,* 11th Dist. Ashtabula No.2002-A-0061, 2003-Ohio-6682, ¶36. In short, the central issue on summary judgment is, "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251– 252 (1986). An appellate court reviews a trial court's entry of summary judgment de novo. *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105 (1996).

{¶13} Appellants first argue the trial court erred in concluding that the opinions of each expert did not differ substantially regarding how and why the basement floor slab erupted following the storms on July 19 and 20, 2013.

{¶14} The exclusions upon which the trial court relied provide:

{¶15} SECTION 1 – LOSSES NOT INSURED

{¶16} 1. We do not insure for any loss to the property described in Coverage A which consists of, or is indirectly and immediately caused by, one or more of the perils listed in items a. through n. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from the actual or external forces, or occurs as a result of any combination of these:

{¶17} * * *

{¶18} l. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundation, walls, floors, roofs or ceilings;

{¶19} * * *

6

**{¶20}** 2. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

**{¶21}** * * *

**{¶22}** c. Water Damage, meaning

**{¶23}** * * *

**{¶24}** (3) water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

**{¶25}** Appellants first argue there are sufficient conflicts between Mr. Mallory's and Mr. Nyzen's expert opinions on the cause of the damage to create a genuine issue of material fact for trial. Appellants note that Mr. Nyzen conducted a much more thorough study of available weather data, which aided in his conclusion that the damage occurred suddenly. Alternatively, appellants assert Mr. Mallory did not consider the severity and intensity of the rain volume. And, in appellants' view, this contributed to his theory that the damage was a result of a gradual process. We find these distinctions inconsequential.

**{¶26}** Appellants are correct that Mr. Mallory did not consider the regional precipitation totals in formulating his opinion that hydrostatic pressure caused the failure. Still, whether the damage occurred suddenly or was a result of a gradual process is irrelevant. Both experts concluded that water pressure under the floor was

7

the root cause of the damage. Pursuant to the contract, this is "water damage," i.e., water below the surface of the ground that exerted pressure on the floor and caused a loss. Because each expert's ultimate conclusion regarding the cause of the loss fell within the definition of "water damage," the loss was excluded from coverage.

{¶27} Appellants next maintain that the evidence demonstrates the coverage exclusions do not apply because (1) the photos of the damage reveal a "catastrophic failure of the floor slab" and "vertical displacement," not merely cracking and separation; and (2) the terms "hydrostatic" or "subsurface" water pressure do not appear in the exclusions.

{¶28} With respect to these points, photos of the floor demonstrate the damage was indeed significant. The damage, nevertheless, involved a large crack that, according to both experts was caused by water pressure which built up beneath the floor. Regardless of the adjectives used to describe the damage, appellants concede, the policy excludes damage caused by "water below the surface of the ground." Whether the ground refers to the soil line (above the dug basement) or it refers to the floor line, it is undisputed that the loss at issue was a result of water pressure below the surface of the ground. Simply because the damage was significant and the policy does not use the phraseology "hydrostatic" or "subsurface" does not imply the loss was somehow covered. The technical terms employed by appellee are synonymous with the type of damage that is expressly excluded. Appellants' appeal to the quality of the loss and the language used by the experts is unavailing.

{¶29} Appellants next argue the trial court erred when it concluded appellee properly, pursuant to the insurance contract, exercised its right not to renew the policy.

8

Appellants maintain appellee canceled the policy in retaliation for their efforts to compel appellee to accept their claim. We do not agree.

{¶30} First of all, appellants submitted no objective evidence that appellee's decision not to renew the policy was retaliatory. Indeed, as will be discussed below, appellee provided a reasonable basis for its decision, even though it was not required to do so under the contract. In this respect, we conclude there is no genuine issue of material fact to be litigated on the issue of appellee's alleged retaliation.

{¶31} That said, the policy included a nonrenewal clause, which provided:

{¶32} Nonrenewal. We may elect not to renew this policy. If we elect not to renew, a written notice will be delivered to you, or mailed to you at your mailing address shown in the Declarations. The notice will be mailed or delivered at least 30 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

{¶33} The homeowner's policy anniversary date was June 18, 2014. On May 6, 2014, appellee sent appellants a letter of its intention not to renew the policy. Although it was not required under the policy to provide a reason, appellee nevertheless explained the home's "cracked exterior masonry on the basement foundation increases the potential for water seepage or interior damage to walls and floors." Appellants acknowledged they received the letter. Appellee's actions were consistent with the policy's nonrenewal provision and we discern no genuine issue of material fact on whether appellee was entitled to discontinue coverage pursuant to the policy.

{¶34} Appellants attempt to analogize the instant scenario with commercial insurance policies, which cannot be cancelled save compliance with R.C. 3937.25, e.g., "[t]he occurrence of a change in the individual risk which substantially increases any hazard." R.C. 3937.25(B). Appellants assert appellee's purported reason for not

9

renewing the policy includes a dispute as to whether the cracked exterior masonry increased the risk of damage. Appellants acknowledge R.C. 3937.25 only applies to commercial insurance. For this reason alone, their argument lacks merit. Furthermore, the May 6, 2014 letter expressly stated appellee would not *renew* the policy, pursuant to the nonrenewal condition. In *Blackwell v. Farmers Ins. Exch.*, 4th Dist. Pickaway No. 05CA3, 2005-Ohio-3499, the court observed:

> **{¶35}** Black's Law Dictionary (6Ed.1990) defines "cancel" as follows: "To obliterate; to strike or cross out. To destroy the effect of an instrument by defacing, obliterating, expunging, or erasing it. To revoke or recall; to annul or destroy, make void or invalid, or set aside. To rescind; abandon; repeal; surrender; waive; terminate. The term is sometimes equivalent to 'discharge' or 'pay.'" Id. at 206, 519 N.E.2d 1380. It defines "cancellation" as follows: "To destroy the force, effectiveness, or validity of. To annul, abrogate, or terminate. * * * As used in insurance law, term refers to the termination of an insurance policy by an act of either or both of the parties to it, prior to the ending of the policy period." Id.

**{¶36}** In light of the foregoing definitions, we conclude appellee's decision was not a cancellation. The May 6, 204 letter states appellee would not renew the policy, which would expire on June 18, 2014. Appellee advised appellant to seek different homeowner's coverage to prevent a lapse in coverage. Nevertheless, appellee was not terminating the coverage as of May 6; instead, the letter indicated appellee remained appellants' carrier for approximately six additional weeks. In short, appellee exercised its contractual right not to renew and its action cannot be viewed as a wrongful termination of the coverage. The trial court did not err in concluding appellants failed to meet their reciprocal burden to create a genuine issue of material fact.

**{¶37}** The trial court did not err in concluding there are no genuine issues of material fact to be litigated in this matter. Therefore, appellee was entitled to judgment

as a matter of law on appellants' claims for declaratory judgment, breach of contract, and wrongful cancellation.

**{¶38}** Appellants' assignment of error is without merit.

**{¶39}** For the reasons discussed above, the judgment of the Lake County Court of Common Pleas is affirmed.

DIANE V. GRENDELL, J.,

THOMAS R. WRIGHT, J.,

concur.