[Cite as *State v. Will*, 2019-Ohio-3906.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                    :

      Plaintiff-Appellant,              :

                               No. 18AP-759

v.                                               :        (C.P.C. No. 17CR-3779)

Mark J.P. Will,                                  :        (REGULAR CALENDAR)

      Defendant-Appellee.               :

---

D E C I S I O N

Rendered on September 26, 2019

---

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Michael P. Walton*, for appellant. **Argued:** *Michael P. Walton*.

**On brief:** *W. Martin Midian*, for appellee. **Argued:** *W. Martin Midian*.

---

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Plaintiff-appellant, State of Ohio, appeals from a judgment of the Franklin County Court of Common Pleas convicting defendant-appellee, Mark J.P. Will, of theft and tampering with records and sentencing appellee to a term of community control. For the reasons that follows, we reverse.

**I. FACTS AND PROCEDURAL HISTORY**

{¶ 2} On July 12, 2017, a Franklin County Grand Jury indicted appellee for theft, in violation of R.C. 2913.02, a felony of the second degree; telecommunications fraud, in violation of R.C. 2913.05, a felony of the second degree; and tampering with records, in violation of R.C. 2913.42, a felony of the third degree. On June 5, 2018, appellee pleaded guilty to theft and tampering with records. On application of the prosecuting attorney, and

for good cause shown, the trial court ordered a nolle prosequi be entered as to Count 2 of the indictment charging appellee with telecommunications fraud.

{¶ 3} At the June 5, 2018 plea hearing, the prosecutor provided the trial court with a statement of the following operative facts:

> [Appellee] was a former employee of a company called U.S. Realty Consultants, which is a company located in Bexley, here in Franklin County. [Appellee] worked as an accountant for that company from 1990 through October of 2016 when another employee in September of 2016 noticed as she was entering some expenses, she came across some transactions she didn't know how to enter. She looked back at an expense report and noticed some problems with it.
>
> She reported this to Mr. Walker, the company's managing director, which he noticed it looking suspicious, also. She started to do an internal investigation looking at former expense reports that were entered by [appellee].
>
> Upon their investigation, they noticed that these expenses were being paid by electronic fund transfers to some accounts. When they contacted the bank, they found out that these accounts, that these electronic fund transfers were in the name of [appellee].
>
> At this time, they reported it to the Bexley police. The Bexley police got involved and began their investigation. Getting all the bank records for as far back as they could go, which was only seven years, they went back through the accounting system. They went all the way back to 2009. Unfortunately, that was as far back as they could go.

(June 5, 2018 Tr. at 9-11.)

{¶ 4} The investigation into appellee's crimes ultimately revealed that appellee initiated 168 fraudulent transactions from January 2009 to September 2016 and that the sums stolen by appellee from U.S. Realty Consultants totaled $753,792.10.

{¶ 5} On September 12, 2018, the trial court held a sentencing hearing. At the hearing, the prosecutor argued that a punishment other than imprisonment would demean the seriousness of appellee's offense. Walker addressed the court on behalf of the victim, U.S. Realty Consultants, to express his desire that appellee be imprisoned for his criminal conduct and to impress on the court the serious emotional and economic harm caused by appellee.

{¶ 6}  At a prior hearing on a motion to continue appellee's plea hearing, Walker addressed the court to express his frustration with what he considered to be undue delays in the prosecution of appellee.  At the hearing, the trial court informed the victim of his disinclination to impose a prison term on offenders who commit theft offenses:

> And I don't know how it will all play out, but I will say I don't send many people to prison for theft offenses. * * * [I]t's unlikely he's going to go to prison.  I mean, that's just the way it is.
>
> * * * So if there's a presumption of prison, you know, he'll have to overcome that, but with no record and if there's restitution made, I don't know what I'm going to do.  I've got to listen to everything and I'll listen to you, but you've got to understand our prisons are full of people, rape, kidnapping, murder.  So – and the legislature, you know, they don't want us to send nonviolent people to prison, although there is a presumption of prison here, so I have that option.

(Feb. 5, 2018 Tr. at 6-7.)

{¶ 7}  As a result of the sentencing hearing, the trial court found the victim had recovered the sum of $350,000 from appellee pursuant to the settlement of a civil action U.S. Realty Consultants brought against appellee.  On September 13, 2018, the trial court sentenced appellee to a five-year term of community control and ordered him to pay restitution in the amount of $418,792.

{¶ 8}  The state has appealed from the judgment of the trial court.

## II.  ASSIGNMENTS OF ERROR

{¶ 9}  Appellant assigns the following as trial court error:

> [1.]  THE TRIAL COURT'S IMPOSITION OF COMMUNITY CONTROL IS CONTRARY TO LAW, AS [APPELLEE] CANNOT OVERCOME THE PRESUMPTION IN FAVOR OF A PRISON TERM.
>
> [2.]  THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO REQUIRE [APPELLEE] TO TENDER THE FULL AMOUNT OF RESTITUTION HE WAS CAPABLE OF TENDERING AT THE TIME OF SENTENCING.

## III.  STANDARD OF REVIEW

{¶ 10} R.C. 2953.08(B) provides the state "may appeal as a matter of right a sentence imposed upon a defendant * * * on any of the following grounds: (1) The sentence

did not include a prison term despite a presumption favoring a prison term for the offense for which it was imposed." *State v. Fisher*, 10th Dist. No. 13AP-995, 2014-Ohio-3887, ¶ 7. The standard of review applied by an appellate court in reviewing an appeal by the state on such grounds is found in R.C. 2953.08(G)(2), which provides as follows:

> The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.
>
> The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. *The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following*:
>
> (a) *That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;*
>
> (b) *That the sentence is otherwise contrary to law.*

(Emphasis added.)

## IV. LEGAL ANALYSIS

### A. Appellant's First Assignment of Error

{¶ 11} In appellant's first assignment of error, appellant contends the sentence imposed on appellee is contrary to law because the findings made by the trial court fail to support the conclusion, pursuant to R.C. 2929.13(D)(2)(b), that a community control sanction would not demean the seriousness of the offense. Appellee responds that the trial court made findings sufficient to overcome the presumption of prison and that the record supports the findings of the trial court. We agree with appellant.

{¶ 12} Pursuant to R.C. 2929.13(D)(1), "for a felony of the first or second degree, * * * it is presumed that a prison term is necessary in order to comply with the purposes and principles of sentencing under section 2929.11 of the Revised Code." Thus, prison is presumed with regard to appellee's conviction of theft. The presumption in favor of prison time may be overcome and a community control sanction may be imposed if the court makes both of the following findings set forth in R.C. 2929.13(D)(2)(a) and (b):

(a)   A community control sanction or a combination of community control sanctions would adequately punish the offender and protect the public from future crime, because the applicable factors under section 2929.12 of the Revised Code indicating a lesser likelihood of recidivism outweigh the applicable factors under that section indicating a greater likelihood of recidivism.

(b)   A community control sanction or a combination of community control sanctions would not demean the seriousness of the offense, because one or more factors under section 2929.12 of the Revised Code that indicate that the offender's conduct was less serious than conduct normally 0 constituting the offense are applicable, and they outweigh the applicable factors under that section that indicate that the offender's conduct was more serious than conduct normally constituting the offense.

{¶ 13} The trial court must make the R.C. 2929.13(D)(2) findings at the sentencing hearing. *State v. Fisher*, 10th Dist. No. 13AP-236, 2013-Ohio-4063, ¶ 7, citing *State v. Martin*, 10th Dist. No. 08AP-1103, 2009-Ohio-3485, ¶ 7. In making these findings, a trial court considering a downward deviation in sentencing, pursuant to R.C. 2929.13(D)(2), must consider the applicable factors in R.C. 2929.12. Accordingly, resolving this R.C. 2953.08(G) appeal requires this court to determine: "(1) whether the trial court expressly made the required findings, and (2) whether we determine by clear and convincing evidence that the record does not support those findings or is otherwise contrary to law." *Fisher*, 2014-Ohio-3887, at ¶ 7, citing *State v. Milhoan,* 10th Dist. No. 13AP-74, 2014-Ohio-310, ¶ 16.

{¶ 14} Here, appellant does not challenge the trial court's finding, pursuant to R.C. 2929.13(D)(2)(a), that appellee is not likely to commit future crimes.[1]  Rather, appellant challenges the trial court's finding, pursuant to R.C. 2929.13(D)(2)(b), that appellee's

---

[1] The state concedes the following factors in R.C. 2929.12(E) indicate that appellee "is not likely to commit future crimes:

(1)  Prior to committing the offense, the offender had not been adjudicated a delinquent child.
(2)  Prior to committing the offense, the offender had not been convicted of or pleaded guilty to a criminal offense.
(3)  Prior to committing the offense, the offender had led a law-abiding life for a significant number of years.
(4)  The offense was committed under circumstances not likely to recur.
(5)  The offender shows genuine remorse for the offense."

conduct in committing theft was less serious than the conduct normally constituting the offense. Appellant argues the trial court erred in determining the applicability of the R.C. 2929.12(C) factors indicating appellee's conduct is less serious than conduct normally constituting the offenses. R.C. 2929.12(C) specifies the less serious factors as follows:

> The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, *as indicating that the offender's conduct is less serious than conduct normally constituting the offense*:
>
> (1) The victim induced or facilitated the offense.
>
> (2) In committing the offense, the offender acted under strong provocation.
>
> (3) In committing the offense, the offender did not cause or expect to cause physical harm to any person or property.
>
> (4) There are substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense.

(Emphasis added.)

{¶ 15} Thus, the statutory framework required the trial court, in making the finding required by R.C. 2929.13(D)(2)(b), to compare appellee's conduct in committing the particular theft offense in this case to conduct normally constituting the offense of theft. At the sentencing hearing, the trial court made the following findings in determining whether any of the R.C. 2929.12(C) factors applied:

> The victim did not induce or facilitate this offense. He did not act under strong provocation.
>
> *I do find there was no physical harm expected to persons or property.*
>
> I've already factored in that it's an economic crime, and his position of trust allowed him to commit it.
>
> *But there was no physical harm to persons, and no property was damaged. That is a factor that I'm supposed to consider.*
>
> There's other substantial grounds for mitigation, and that's his health condition. He does have a life-threatening health condition. He's on about nine different medications. *It costs $82 a day to house somebody. And, in addition, with these health factors, it would be much more expensive.*

(Emphasis added.) (Sept. 12, 2018 Tr. at 45.)

{¶ 16} In the trial court's sentencing entry, the trial court found, pursuant to R.C. 2929.12(C), the following factors indicated that appellee's conduct in committing theft was less serious than conduct normally associated with that offense:

> For the less serious factors the Court found:
>
> 5. *The offender did not expect to cause physical harm to person or property.*
>
> 6. The [appellee's] physical and mental conditions constitute substantial grounds to mitigate the offender's conduct even if they do not constitute a defense. *The [appellee] has a life threatening disease and was taking numerous medications that did at times affect and impair the [appellee's] judgment.* The [appellee] has also paid $350,000.00 in restitution and will continue to pay restitution.

(Emphasis added.) (Sept. 13, 2018 Sentencing Entry at 2-3.)

{¶ 17} Appellant argues the trial court erred in finding, pursuant to R.C. 2929.12(C)(3), appellee's conduct in committing theft was less serious than conduct normally constituting the offense because appellee did not cause or expect to cause harm to persons or property. Appellant maintains the factor listed in R.C. 2929.12(C)(3) is inapplicable to most theft offenses because the conduct normally constituting theft does not create a risk of physical harm to persons or property.

{¶ 18} In *State v. Miller*, 11th Dist. No. 2017-L-074, 2017-Ohio-8808, appellant operated a fraudulent psychic readings business for approximately 20 years. In exchange for her services, appellant was paid in cash, credit card cash advances, jewelry, and expensive watches. Appellant was indicted on numerous theft-related charges. Appellant entered a plea of guilty to an amended count of aggravated theft, in violation of R.C. 2913.02(A)(3), a felony of the second degree. The trial court sentenced appellant to an eight-year prison term and ordered her to pay $1.4 million in restitution to her victims.

{¶ 19} In her appeal from her conviction, appellant argued her sentence was contrary to law because the trial court's findings, pursuant to R.C. 2929.12, were not supported by the record. More particularly, appellant argued the evidence supported a finding that her criminal conduct was less serious than conduct normally constituting theft because she did not cause or expect to cause physical harm to persons or property. The court of appeals rejected appellant's argument stating: "The crime to which appellant

pleaded guilty did not involve an allegation of physical harm. Hence, appellant's observation is irrelevant to the facts of this case." *Id.* at ¶ 10.

{¶ 20} This court in *State v Nichter*, 10th Dist. No. 15AP-886, 2016-Ohio-7268, reached a similar conclusion in the state's appeal from a trial court judgment granting judicial release. In that case, appellee had been convicted of multiple counts of identity fraud, and the trial court sentenced appellee to a term of imprisonment. The trial court subsequently granted appellee's motion for judicial release on finding that appellee was not likely to reoffend and that appellee's conduct in committing identity fraud was less serious than conduct normally constituting the offense, in part, because he did not cause or expect to cause physical harm to persons or property. This court, in reversing the trial court, made the following comments:

> The trial court also found that the mitigating factor listed in R.C. 2929.12(C)(3) existed in this case because, in committing identity fraud, appellee "did not cause or expect to cause physical harm to any person or property." Though the facts underlying appellee's crimes show that the mitigating factor listed in R.C. 2929.12(C)(3) exists, we find that this factor is largely irrelevant to the analysis in this case because the conduct normally constituting identity fraud creates no risk of physical harm to any person or property. R.C. 2913.49. The fact that appellee, in committing identity fraud, did not cause or intend to cause physical harm to persons or property does not mean that his conduct was less serious than conduct normally constituting that offense. *See, e.g., State v. Smith*, 9th Dist. No. 11CA0115-M, 2012-Ohio-2558, ¶ 7 (for a conviction of a single count of trafficking in drugs, none of the mitigating factors under R.C. 2929.12 are relevant); *State v. McClusky*, 6th Dist. No. WD-03-018, 2004-Ohio-85, ¶ 25 (where defendant is convicted of cocaine possession, whether or not physical harm was intended by appellant's drug abuse was not a relevant mitigating factor for sentencing). In our view, the factor listed in R.C. 2929.12(C)(3) is of dubious value in mitigation of appellee's conduct.

*Id.* at ¶ 42.

{¶ 21} The above-cited case law stands for the proposition that for certain offenses, the factor identified in R.C. 2929.12(C)(3) is either irrelevant or of dubious value in mitigating the offender's conduct. Yet the trial court in sentencing appellant to community control in this case concluded because appellee did not cause or intend to cause physical

harm to persons or property, his conduct in committing theft was less serious than the conduct normally constituting the offense. On these facts, such a conclusion is unsupportable.

{¶ 22} Appellant also takes exception to the trial court's finding at the sentencing hearing that the extraordinary cost to the state of Ohio associated with incarcerating an offender who is ill and in need of costly medical care, such as appellee, somehow indicates that appellee's conduct in committing theft was less serious than conduct normally constituting the offense. The trial court made the following observations at the sentencing hearing:

> There's other substantial grounds for mitigation, and that's his health condition. He does have a life-threatening health condition. He's on about nine different medications. It costs $82 a day to house somebody. And, in addition, with these health factors, it would be much more expensive.

(Sept. 12, 2018 Tr. at 45.)

{¶ 23} The trial court ostensibly made this finding pursuant to the catch-all provision of R.C. 2929.12(C)(4) which permits the trial court to consider if "[t]here are substantial grounds *to mitigate the offender's conduct*, although the grounds are not enough to constitute a defense." (Emphasis added.) Appellant argues that any consideration of the cost to confine a particular offender is irrelevant to the determination whether *the offender's conduct* in committing the offense is less serious than conduct normally constituting the offense. We agree.

{¶ 24} Appellee cites this court's prior decision in *Milhoan* and the prior decision of this court on reconsideration in *State v. Martin*, 192 Ohio App.3d 681, 2011-Ohio-951 (10th Dist.), for the proposition that a trial court may consider an offender's physical and psychological state in determining whether *the conduct* in committing the offense was less serious than conduct normally constituting the offense. We acknowledge that our prior decisions have held that an offender's physical and psychological state can be considered as a mitigating factor, under R.C. 2929.12(C)(4), when the offender's physical and psychological state is relevant to the offender's conduct. *Milhoan* at ¶ 27 (appellee's mental, neurological, and emotional conditions could be assessed under R.C. 2929.12(C)(4) as mitigating appellee's conduct in possessing child pornography); *Martin*, 2011-Ohio-951, at

¶ 20, fn. 10 (under R.C. 2929.12(C)(4), "the mental health issues of the defendant at the time mitigate his misconduct, even though they were not a defense" to felonious assault).

{¶ 25} However, we agree with appellant that the added cost to imprison appellee due to his physical illness has no bearing on the seriousness of appellee's criminal conduct. There is no logical relationship between the seriousness of appellee's conduct in committing the theft offense in this case and the cost to the state for appellee's care while he is in prison.[2] In other words, the fact that it may cost the state more money to incarcerate appellee due to his medical condition does not mitigate his prior conduct in committing the theft offense in this case. *See State v. Nichter*, 10th Dist. No. 18AP-230, 2019-Ohio-279 (though appellee's "dismal financial situation" may have motivated appellee to commit identity fraud, it did not constitute "substantial grounds" mitigating appellee's conduct in committing identity fraud); *State v. Cunningham*, 2d Dist. No. 2016-CA-31, 2017-Ohio-8333, ¶ 5, 11 (evidence that burglary offender struggled with "chemical dependency from a young age" and "was under the influence of drugs during the commission of the crimes" for which he was convicted are not "substantial grounds to mitigate [his] conduct," where the evidence also shows that appellant "targeted [specific] people," stolen "exactly what [he] wanted to steal," or planned in advance how he would dispose of the stolen property).

{¶ 26} Appellant also challenges the trial court's finding in its sentencing entry that appellee "has a life threatening disease and was taking numerous medications *that did at times affect and impair* [*appellee's*] *judgment.*" (Emphasis added.) (Sept. 13, 2018 Sentencing Entry at 3.) Appellant argues this finding is clearly and convincingly unsupported in the record given the contrary finding made by the trial court at the sentencing hearing. We agree.

{¶ 27} During the trial court's colloquy with Walker at the sentencing hearing, the trial court made it clear it did not believe that either a momentary lapse in judgment or mental impairment caused appellee to commit theft. The transcript reads, in relevant part, as follows:

MR. WALKER: I will then move on.

---

[2] We acknowledge one of the three "overriding purposes of felony sentencing" under R.C. 2929.11(A) is to "promote the effective *rehabilitation of the offender* using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." (Emphasis added.)

> The other misconception is that this was somehow some kind of a lapse of judgment or mental impairment—that's not the right word—but some issue that caused him a lapse of judgment.
>
> THE COURT: No. He stole from you for a period of years and years. It wasn't some lapse of judgment, momentarily.
>
> * * *
>
> MR. WALKER: * * * The idea that he was mentally impaired and couldn't carry this off is factually incorrect.
>
> THE COURT: I don't believe that, sir. I'm more concerned about his health, one, and his lack of prior record.

(Sept. 12, 2018 Tr. at 7-8, 10-11.)

{¶ 28} As noted above, decisions from this district have held that, under certain circumstances, an offender's physical and/or mental impairments can be considered under the catch-all provision as a factor mitigating criminal conduct. *Milhoan*; *Martin*, 2011-Ohio-951. Appellant, however, does not argue the trial court may not consider appellee's physical or psychological condition in determining the relative seriousness of appellee's criminal conduct; rather, appellant argues the trial court erred in making such a finding in its sentencing entry after previously rejecting the suggestion that appellee committed his crimes due to mental incapacity of momentary lapse in judgment. We agree with appellant that the trial court's statements at the sentencing hearing belie the trial court's finding in the sentencing entry that certain of appellee's medications "did at times affect and impair [appellee's] judgment." (Sept. 13, 2018 Sentencing Entry at 3.) *See State v. Gordon*, 9th Dist. No. 28943, 2018-Ohio-4196, ¶ 13 (vacating trial court decision to sentence appellee to community control for first and second-degree felonies where "sentence rests upon wholly inconsistent statutory findings").

{¶ 29} Based on the foregoing, we agree with appellant that the trial court erred in conducting the analysis of the R.C. 2929.12(C) factors. Though appellee and the trial court cited the probation department's recommendation of community control sanction in support of the sentence in this case, our review of the recommendation reveals the focus of the probation department was that appellee was unlikely to reoffend. Similarly, while our review of the pre-sentencing investigation evidences support for the trial court's conclusion that the state will be required to bear additional costs to incarcerate appellee because he

suffers from a serious medical condition and requires numerous medications, the additional cost to care for appellee does not factor into the R.C. 2929.12(C) analysis.

{¶ 30} The trial court's weighing of the R.C. 2929.12 factors vests the trial court with the discretion to " ' "determine the weight to assign a particular statutory factor." ' " *Fisher*, 2014-Ohio-3887, at ¶ 16, quoting *Saur* at ¶ 46, quoting *Arnett* at 215. Here, the trial court concluded "in weighing the factors[,] * * * the less serious factors outweigh the more serious factors." (Sept. 13, 2018 Sentencing Entry at 3.) Because the trial court erred in conducting the analysis of the factors in R.C. 2929.12(C), we must reverse the judgment of the trial court and vacate appellee's sentence.[3] Though appellant asks this court to remand the matter with instructions to impose a prison term, R.C. 2953.08 gives this court the option to vacate the sentence and remand the matter to the sentencing court for resentencing. Under the circumstances, we find the trial court should have an opportunity to reweigh the R.C. 2929.12 factors in light of this decision and redetermine whether a community control sanction would demean the seriousness of the offense.

{¶ 31} For the foregoing reasons, appellant's first assignment of error is sustained.

## B. Appellant's Second Assignment of Error

{¶ 32} In appellant's second assignment of error, appellant argues the trial court erred in connection with the order of restitution. More particularly, appellant argues the trial court erred when it allowed appellee to retain approximately $100,000 on deposit at his bank and permitted appellee to pay the remaining restitution in monthly installments.

{¶ 33} The trial court justified its decision to permit appellee to retain these funds as follows:

---

[3] Appellant correctly observes that "the trial court combined the factors defined by (B)(3) and (B)(6)" in making the determination that appellee's conduct in committing theft was less serious than conduct normally constituting the offense. (Appellant's Brief at 9.) Our review of the sentencing hearing transcript reveals that the trial court found, in addition to the factor listed in R.C. 2929.12(B)(2) pertaining to serious economic harm, the factors listed in R.C. 2929.12(B)(3), (5), and (6) also rendered appellee's conduct in committing theft more serious than conduct normally constituting theft. Those factors are: "[t]he offender held a * * * position of trust in the community, and the offense related to that * * * position"; "[t]he offender's * * * occupation * * * was used to facilitate the offense * * *"; and "[t]he offender's relationship with the victim facilitated the offense." The General Assembly set out these aggravating factors separately, indicating that each factor is distinct and different. In our view, failing to afford individual weight to each of the applicable aggravating factors by combining multiple factors into one creates a risk that the sentencing court will misapprehend the relative seriousness of an offender's conduct in committing certain theft offenses. However, because appellant confined its argument in support of its assignment of error to the R.C. 2929.12(C) factors, and because we are remanding the matter for resentencing, we reach no conclusion regarding the trial court's consideration of the R.C. 2929.12(B) factors in this appeal.

> You're going to pay $1,500 a month restitution. Based on the money you have in your account, I am going to find that $1,500 a month is appropriate to pay unless you show to me differently. *I could order to you turn over the $100,000. I am not going to do that because you have to live.* But on the other hand, you're going to make a good-faith effort to pay.
>
> You will be on probation for five years, and I do expect the balance to be paid. We'll see what happens.
>
> I'm going to waive the fine and costs. I would rather see the money go to restitution.

(Emphasis added.) (Sept. 12, 2018 Tr. at 48-49.)

{¶ 34} Our review of the sentencing hearing transcript convinces us the primary reason the trial court allowed appellee to retain a sizeable amount of money in his account when there remained a large sum of unpaid restitution was the trial court's recognition that appellee would need funds to support himself while on community control. We have, however, in ruling on appellant's first assignment of error, reversed the judgment of the trial court and remanded the case for resentencing and need not address, at this time, whether there is a reasonable justification for allowing appellee to retain control over significant funds otherwise available for restitution. We cannot predict what type of sentence the trial court may impose, on remand, after reassessing the relative seriousness of appellee's theft offense. If the trial court, on remand, decides to impose a prison term, then the trial court will be confronted with a different set of circumstances in determining restitution. Accordingly, we decline to address the restitution issue raised in appellant's second assignment of error. *See* App.R. 12(A)(1)(c). *See also State v. Jama*, 10th Dist. No. 11AP-210, 2012-Ohio-2466, ¶ 54 (because this court vacated the third-degree felony verdict for possession of drugs and reinstated the original second-degree felony verdict for possession of drugs, the state's assignment of error challenging the sentence on the third-degree felony was rendered moot); *State v. Doyle*, 4th Dist. No. 04CA23, 2006-Ohio-5211 (because the failure to notify appellant of post-release control required vacatur of the sentence and a remand for resentencing, defendant's second assignment of error raising another sentencing issue was rendered moot); *State v. Lanton*, 2d Dist. No. 02CA124, 2003-Ohio-4715 (where court of appeals found appellant did not waive his right to counsel before pleading guilty, the issue of whether the trial court properly followed sentencing guidelines or considered mitigating factors in sentencing defendant was moot).

{¶ 35} Based on the foregoing, we find our determination of appellant's first assignment of error renders moot appellant's second assignment of error.

## V. CONCLUSION

{¶ 36} Having sustained appellant's first assignment of error and having determined appellant's second assignment of error is moot, we reverse the judgment of the Franklin County Court of Common Pleas and remand the matter to the trial court for resentencing.

*Judgment reversed*;
*cause remanded for resentencing.*

KLATT, P.J., and DORRIAN, J., concur.

_____